ENOSBURG GRAIN COMPANY *v.* WILDER AND CLARK.

February Term, 1941.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed May 13, 1941.

*Sylvester & Ready* for defendants.

*Keith Brown* for plaintiffs.

MOULTON, C. J. This cause was tried by jury in the Franklin Municipal Court. The plaintiffs are co-partners, and the three defendants Allen Wilder, Ross Clark and Eunice Clark were sought to be held liable as co-partners for a sum claimed to be due for grain and feed previously sold and delivered. The verdict was for the plaintiff against all three defendants.

After verdict and before judgment the defendants moved to dismiss the action because there had been no evidence that, prior to the issuance of the writ, the plaintiff had complied with the provisions of Chapter 247 of the Public Laws by filing a return setting forth the location and nature of the business and the individual names and residences of the individual partners as required by sec. 6040, and, consequently, in accordance with sec. 6053 was prohibited from maintaining the action. The motion was overruled and the defendants excepted.

A failure to comply with the provisions of Chapter 247 prior to the issuance of the writ makes the process void and deprives the court of jurisdicton, under the peremptory terms of P. L. 6053, and this is a defect that cannot be waived by the adverse party, for jurisdiction of the process is as essential as jurisdiction of the subject matter. *Wilson Bros. Garage* v. *Tudor*, 89 Vt. 522, 525, 95 Atl. 794. "Process prohibited by law is void. A defect of this kind cannot be cured by waiver, consent or agreement. To permit this would be to nullify the statute." *Howe* v. *Lisbon Savings Bank and Trust Co.*, 111 Vt. 201, 14 Atl. 2d. 3, 6; *Hayden, Admx.* v. *Caledonia Nat'l Bank*, (decided at the present term of this court) *post*, p. 30. The statute, however, is regulative in nature, and does not render the transaction illegal, in the sense of being void, but affects only the remedy. *Nemie* v. *Todd*, 89 Vt. 502, 506, 96 Atl. 14; *Ambro Adv. Co.* v. *Speed-Way Mfg. Co.*, 211 Iowa 276, 233 N. W. 499, 500.

The inquiry under the motion to dismiss relates only to what appears of record. *Tracy* v. *Grand Trunk Ry. Co.*, 76 Vt. 313, 318, 57 Atl. 104; *Flory* v. *Flory's Est.*, 98 Vt. 251, 252, 127 Atl. 369; *Leonard* v. *Willcox et al.*, 101 Vt. 195, 203, 142 Atl. 762; *In Re Delligan's Estate*, 110 Vt. 294, 302, 6 Atl. 2d. 1. Here, the record contains nothing upon the subject, one way or the other; and so we must ascertain upon which party lies the

14

burden of proof, a question left undecided, as regards this particular statute, in *Bishop and Co.* v. *Thompson,* 99 Vt. 17, 21, 130 Atl. 701.

 The municipal courts of this State, as established by Chap. 57 of the Public Laws, are courts of record (P. L. 1404, 1405) and the proceedings therein are according to the course of the common law. Although certain causes are not triable by them, and there is a statutory restriction as to the amount involved in civil actions, these courts are to be classed as courts of general jurisdiction. *McDevitt* v. *Connell,* (N. J.) 63 Atl. 504, 505; *Colagiovanni* v. *District Court,* 47 R. I. 323, 133 Atl. 1, 2. This conclusion is not affected by *State* v. *Cloran,* 47 Vt. 281, 285, in which it was held that the Burlington City Court was a court of limited and special jurisdiction with no authority to act otherwise than as specified by the statute by which it was created; for this court, which no longer exists, was established by the provisions of the then charter of the City of Burlington (Sec. 11, No. 255, Acts of 1872), and its jurisdiction in civil actions extended only to those causes wherein a resident of the city was a party, or, in some instances, where neither party was a resident of the State, and, although it had authority to try certain criminal offenses committed in the County of Chittenden, it had no power to do so by jury in proceedings of this nature. Every presumption that is not inconsistent with the record is to be indulged in favor of the jurisdiction of a court of general jurisdiction. *Applegate* v. *Lexington, etc. Mining Co.,* 117 U. S. 255, 6 Sup. Ct. 742, 29 L. Ed. 892, 896; *Treat* v. *Maxwell,* 82 Me. 76, 19 Atl. 98, 99; *Horn* v. *Horn,* 234 Ill. 268, 84 N. E. 904, 905, 906. Indeed, it has been held that the same rule applies in this state to the jurisdiction of justices of the peace. *Vaughn* v. *Congdon,* 56 Vt. 111, 116, 48 Am. Rep. 758; *Wright* v. *Hazen and Gordon,* 24 Vt. 143, 146. The contrary not appearing by the record it will be presumed that all incidental steps necessary to confer jurisdiction have been taken. *Colagiovanni* v. *District Court, supra; Davis* v. *Rothenberg,* 124 Okla. 74, 254 Pac. 37, 38. This presumption placed upon the defendants the duty of producing evidence tending to show that the requirements of Chap. 247 had not been met. *Tyrrell* v. *Prudential Ins. Co.,* 109 Vt. 6, 23, 192 Atl. 184, 115 A. L. R. 392; *State* v. *Lizotte,* 109 Vt. 378, 387,

197 Atl. 396. In *Arel* v. *Centebar,* 73 Vt. 238, 239, 50 Atl. 1064, a motion to dismiss for lack of jurisdiction was held to have been properly overruled when there was nothing on the record to show such lack. And see, *Scott* v. *Darling,* 66 Vt. 510, 514, 29 Atl. 993. The great weight of authority is that the burden of showing non-compliance with partnership registration statutes is upon the party raising the issue; *Davis* v. *Rothenberg, supra; Humphrey* v. *City Nat'l. Bank,* 190 Ind. 293, 130 N. E. 273, 278; and cas. cit. Annotations, 45 A. L. R. 276, ff., and 59 A. L. R. 460. There was no error in the denial of the motion. The defendants had not sustained the burden.

■■ The defendants also moved to set the verdict aside upon several other grounds, and excepted to the denial of their motion. Only one of these grounds is briefed, which is that the finding by the jury that the defendant Ross Clark was liable as a co-partner was wholly unsupported by the evidence. The plaintiffs do not claim that he was actually a partner, but merely that he held himself out, or permitted himself to be held out, as such, and therefore was estopped from deny-ing his liability to those who had extended credit in reliance thereon, under the rule stated in *Johnson and Co.* v. *Marsh et al.,* 111 Vt. 266, 271, 15 Atl. 2d. 577, 580, and cas. cit. Since this motion is the same in nature and substance as a motion for a directed verdict, we must inquire whether there was evidence which, taken in the most favorable light for the plaintiffs, fairly and reasonably tended to support their claim. *Paska et al.* v. *Saunders et al.,* 103 Vt. 204, 216, 153 Atl. 451. Contradictions and contradictory inferences are, of course, for the jury and cannot avail the defendants. *Lee* v. *Donnelly,* 95 Vt. 121, 128, 113 Atl. 542; *Comeau* v. *Manuel and Sons Co.,* 84 Vt. 501, 509, 80 Atl. 51. And so is the effect of modifying evidence, *Ste. Marie* v. *Wells,* 93 Vt. 398, 399, 108 Atl. 270.

So construed the testimony was sufficient to justify the jury in finding these facts: After the death of his wife, Flora Wilder, in 1929, the defendant Allen Wilder, as her administrator, carried on a store which belonged to her estate of which Ross Clark was manager. Sometime in 1930, a sign bearing the name ''Wilder and Clark'' was placed over the entrance to the store, and remained there until November, 1936, when it was changed to ''Franklin I.G.A. Store.'' During the same month,

Flora Wilder's Estate having been settled, Allen Wilder conveyed his right and title in the store to his daughter Eunice, who had married Ross Clark in 1934. During all this time Ross Clark managed the business, ordered the stock, kept the records, paid the bills and signed checks "Wilder and Clark."

The specifications contained items dating from December 19, 1936, to April 12, 1937, and covered merchandise delivered to Ray Tittemore. When the latter sought to obtain credit from the plaintiffs it was refused and thereupon Ross Clark instructed them to make the delivery and charge the price to Wilder and Clark. All subsequent purchases by Tittemore were so charged and various statements sent to Wilder and Clark, upon which Ross Clark, from time to time, and without objection, made payments. In consequence of an agreement Tittemore's milk checks were made out and delivered to Ross Clark, to be applied upon the plaintiff's account, and Tittemore's bill for groceries at the store. The plaintiffs understood and believed that Ross Clark was a partner and in this belief extended credit to Wilder and Clark.

With the evidence standing thus, it cannot be said that the verdict, as against Ross Clark, was without evidentiary support. It is argued that if the plaintiffs had examined the quitclaim deed given by Allen Wilder to his daughter it would have been apparent that Ross Clark had no interest whatsoever in the business. But without considering whether, in the circumstances, they were under the duty of searching the public records, it is enough to say that the deed merely conveyed all Wilder's "right and title in and to the Wilder Clark Company, both real and personal, said Wilder Clark Company's store being located in the village of Franklin," and that there is nothing in this that is inconsistent with the existence of a partnership interest on the part of Ross Clark.

It is also argued that the name "Clark" in "Wilder and Clark" referred to Eunice Clark only, and not to Ross Clark. But this does not explain the fact that the trade name was used, and the business conducted under it, for four years before Eunice Wilder became Eunice Clark.

All the questions raised have been considered and no error has been made to appear.

*Judgment Affirmed.*